*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WISEMAN/GIBSON, Minors.

UNPUBLISHED
March 24, 2022

No. 357464
Livingston Circuit Court
Family Division
LC No. 2020-016185-NA

Before: CAVANAGH, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

In this child protective proceeding, respondent-mother appeals by right the trial court's order of adjudication placing her five children, ARW, BW, ALW, AG, and EG, under the court's jurisdiction.[1] We affirm.

## I. BACKGROUND

This case was initiated by Child Protective Services (CPS) after it was notified that respondent-mother, her parents, her boyfriend, ARW, BW, and ALW had been sleeping in an SUV parked in a hotel parking lot. Respondent-mother had recently relocated to Michigan from Wisconsin, and the family had been staying at the hotel as paying customers until they could no longer pay for a room. CPS deemed inadequate the children's living conditions and removed them from respondent-mother's care. At that time, AG and EG were living with their father in Muskegon. CPS uncovered allegations from 2013 that the father of AG and EG had sexually abused one of respondent-mother's children in Wisconsin. The allegations were never substantiated, and criminal charges were not filed. AG and EG were eventually removed from their parents' custody and placed in foster care.

In the months following removal of the children, the Department of Health and Human Services (DHHS) filed numerous petitions regarding the parents of the children. The new petitions included additional allegations, and the fifth amended petition sought an order terminating

---

[1] The fathers of the children are not parties to this appeal.

respondent-mother's parental rights to the children at the initial disposition. Respondent-mother declined to enter a plea, and an adjudication bench trial was conducted.[2] Respondent-mother's attorney argued at the trial that the DHHS had hastily removed the children from respondent-mother's care and custody without offering any services or making any efforts to prevent removal. Before the trial court rendered an adjudicative verdict, respondent-mother and the DHHS indicated that they had reached an agreement pursuant to which the DHHS changed the permanency planning goal from termination to reunification in exchange for respondent-mother's waiver of any assertion that reasonable efforts had not been made to prevent removal. The trial court then concluded the bench trial, determining that it had jurisdiction under MCL 712A.2(b)(1) and (2). Respondent-mother appeals.

## II. ADJUDICATION

Respondent-mother argues that the trial court, while making findings of law in determining that there was sufficient evidence to exercise jurisdiction under MCL 712A.2(b), failed to make any specific factual findings. Minimally, according to respondent-mother, if there were any findings of fact expressed by the court, they were woefully inadequate. Respondent-mother contends that remand is necessary for the trial court to make adequate factual findings. Respondent-mother does not maintain that the evidence was insufficient to support the trial court's exercise of jurisdiction.

---

[2] In *In re Mota*, 334 Mich App 300, 312-313; 964 NW2d 881 (2020), this Court set forth the general procedural framework of child protective proceedings:

> The DHHS, following an investigation, may petition a court to take jurisdiction over a child. The petition must contain essential facts that, if proven, would permit the court to assume and exercise jurisdiction over the child. If a petition is authorized, the adjudication phase of the proceedings takes place, and the question at adjudication is whether the trial court can exercise jurisdiction over the child (and the respondents-parents) under MCL 712A.2(b) so that it can enter dispositional orders, including an order terminating parental rights.

> * * *

> If a trial is held regarding adjudication, the respondent is entitled to a determination of the facts by the jury or judge, the rules of evidence apply, and jurisdiction must be established by a preponderance of the evidence. The dispositional phase involves a determination of what action, if any, will be taken on behalf of the child. Unlike the adjudicative trial, at the initial dispositional hearing the respondent is not entitled to a jury determination of the facts and, generally, the Michigan Rules of Evidence do not apply, so all relevant and material evidence is admissible. Termination of parental rights may be ordered at the initial dispositional hearing. If permanent termination of parental rights is sought, the petitioner bears the burden of proving the statutory basis for termination by clear and convincing evidence. [Quotation marks, citations, and brackets omitted.]

MCR 3.972 addresses adjudication trials, but it simply indicates that "the verdict must be whether one or more of the statutory grounds alleged in the petition have been proven." MCR 3.972(E). MCR 3.972 does not contain language requiring the trial court to make or to set forth factual findings. We note that MCR 3.977(I)(1) provides that a trial court must "state on the record or in writing its findings of fact and conclusions of law[,] [and] [b]rief, definite, and pertinent findings and conclusions on contested matters are sufficient." But MCR 3.977 pertains solely to termination hearings. MCR 2.517(A) requires a trial court to make findings of fact in a bench trial and to place them on the record, but that provision does not apply to adjudication trials. See MCR 3.901(A)(2).

MCL 712A.2(b), which lists the grounds under which a trial court can take jurisdiction in a child protective proceeding, is silent with respect to whether a court must make a record of its factual findings. MCL 712A.2(b)(1) and (2) necessarily require certain factual findings or determinations to be made so as to allow a trial court to exercise jurisdiction. MCL 712A.2 provides, in pertinent part:

> (b) [A court has] [j]urisdiction in proceedings concerning a juvenile under 18 years of age found within the county:
>
> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .[, or]
>
> * * *
>
> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

In this case, the trial court stated on the record that it found by a preponderance of the evidence that the DHHS had established subdivisions (1) and (2) of MCL 712A.2(b), expressly reciting most of the language in each of those provisions. Respondent-mother fails to proffer any relevant authority that required more of the trial court. Moreover, the court stated the day before it rendered its decision, but after proofs had closed, that the evidence demonstrated that the children had "poor hygiene," that they were not receiving "medical or dental care," and that their "educational needs [were] not being met." We conclude that respondent-mother's argument does not merit remand for factual elaboration on the record with regard to adjudication.

## III. REMOVAL

Respondent-mother argues that the trial court erred by removing the children from her care because the DHHS has not made reasonable efforts to prevent removal. Respondent-mother complains that poverty was the root cause of her difficulty in properly caring for the children, yet no financial, housing, or other type of referral resources were offered to her to prevent removal of

the children. In a less-than-clear argument, respondent-mother further contends that she could not legally waive her right to have the DHHS make reasonable efforts to prevent removal because parents have a fundamental constitutional right to make decisions regarding the care, custody, and control of their children.

We first note that the adjudication trial occurred approximately eight months after the initial removal of the children. Respondent-mother did not appeal the removal decision and order at or around the time of removal. Under MCR 3.993(A)(1), one of the types of orders appealable to this Court by right is an "order removing a child from a parent's care and custody." There was no timely claim of appeal of the removal order. And respondent-mother never filed an application for leave to appeal. Instead, respondent-mother waited until an adjudication order was entered before filing an appeal and challenging the removal order.[3] We thus question whether we even have jurisdiction to entertain respondent-mother's arguments challenging removal of the children.[4]

Moreover, even assuming that the children should not have been removed because reasonable efforts were not made to prevent or eliminate the need for removal, MCR 3.963(B)(1)(c); MCR 3.965(C)(2)(d), we note there is no undermining of the adjudication order: Releasing the children to respondent-mother and not ordering removal would not have stopped the protective proceedings from moving forward. See MCR 3.965(B)(13)(a) (if a court authorizes the filing of a petition, it "may release the child to a parent . . . and may order such reasonable terms and conditions believed necessary to protect the physical health or mental well-being of the child"). Additionally, at this stage of the proceedings, "removal" has essentially become a moot issue. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998) (applying the doctrine of mootness when "there is no meaningful relief this Court can provide . . ."). With the adjudication complete, the dispositional phase of the proceedings began, and the DHHS is under a duty to make reasonable efforts at reunification. *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). Moreover, the dispositional review hearings that now take place must entail "court evaluation of the continued need and appropriateness for the child to be in foster care." MCR 3.975(A). Thus, the children could potentially be returned to respondent-mother's care.[5]

Furthermore, respondent-mother has not presented us with a clear and cogent argument to disregard the waiver agreement that she reached with the DHHS.[6] There is one final point that we

---

[3] A dispositional order recognizing jurisdiction upon conclusion of the adjudicative phase is in itself an order that is appealable by right to this Court. MCR 3.993(A)(2).

[4] By analogy, our Supreme Court's ruling in *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019), perhaps suggests that plain-error review is the proper procedural approach under the circumstances.

[5] With the passage of time and evolution of circumstances and events, we believe that it would be wholly inappropriate, assuming an earlier removal error, to order the immediate return of the children to respondent-mother on remand.

[6] The agreement between respondent-mother and the DHHS is indeed an oddity that this panel has never previously confronted. Interestingly, if the agreement is not honored as advanced by

make. The obligation of the DHHS to make reasonable efforts to prevent the need for removal of a child must be "[c]onsistent with the circumstances." MCR 3.963(B)(1)(c); MCR 3.965(C)(2)(d). And "[i]n making the reasonable efforts determination . . ., the child's health and safety must be of paramount concern to the court." MCR 3.965(C)(4).[7] This was not a case in which the children were living in a "home" where poverty-driven neglect was alleged. Rather, the children were living in a vehicle and had been doing so for three days. A DHHS caseworker testified that, "[o]n scene," she "had reached out to family members on the other side of the state in Muskegon" in regard to possible relative placement, asked respondent-mother "about other relatives," and was informed by respondent-mother that she did not have any plan. The caseworker also testified that before the decision to remove the children was made, the caseworker informed respondent-mother about available shelters. Thus, some efforts were made by the DHHS to avoid removal when confronted with the homeless family. The caseworker acknowledged that she did not provide respondent-mother with other housing resources, but we are doubtful that doing so would have resulted in housing being immediately available such that removal could have been entirely avoided under the circumstances. In sum, we hold that reversal is unwarranted.

We affirm.

/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Deborah A. Servitto

---

respondent-mother, it would seem to also allow the DHHS to return to its original position that termination be the permanency planning goal. Although it is unnecessary to reach the issue, we find the agreement troubling. Whether the DHHS seeks termination of parental rights at the initial dispositional hearing or instead sets a goal of reunification should be determined solely on the basis of a child's best interests, not on the basis of the DHHS's apparent attempt to avoid its general obligation to make reasonable efforts to prevent removal.

[7] We do agree with respondent-mother that this case did not involve aggravated circumstances that would have excused the DHHS from making reasonable efforts to prevent removal. See MCR 3.965(C)(4)(a)-(d).